31947. HUTCHISON *v.* BALL.

Decided May 26, 1948.

*Frank G. Wilson,* for plaintiff in error.

*Charles J. Bloch, John B. Harris, Alexander A. Lawrence,* as amici curiæ.

*C. A. Cunningham, V. Eugene Morgan,* contra.

FELTON, J. From the plaintiff's evidence adduced upon the trial of the case it appeared that the plaintiff took her automobile to the defendant to have a clutch repaired which had been burned out. The defendant told her that the back bearing was "throwing oil," and she would have to have a new one and that the motor would require overhauling. She did not know anything about mechanics and followed the defendant's advice and allowed him to replace the bearing, overhaul the motor, replace the clutch and put in a new window glass. His bill for the work

was in the amount of $120.92. About the third day. after the repairs had been made and the car returned to her, the clutch "went haywire" again and it was carried back to the defendant who said he repaired the clutch which he said was all that was wrong with it and that the cost of the repairs was only $18. The plaintiff asked the defendant on both occasions if there was anything wrong with the crank shaft and he said he was sure the crank shaft was all right. He said, "Yes, Ma'am, done had it fixed all right." After the second trip to the defendant's garage for repairs the plaintiff thought the car was good enough to make the trip to California so she started out. On this trip the car was not driven over 25 miles per hour and was stopped to have the oil and grease changed, but the motor broke down again when she got to Alabama from Macon. She took the car to a mechanic in Alabama to have it fixed so that she could drive it back to Macon where it was returned to the defendant. She thought the defendant patched the car up because it didn't hold up and the defendant charged her $19.55 for repairs that time. The fourth time she took it to the defendant he told her that the trouble was in the crank shaft and that he would put in a new crank shaft for $55, but she did not allow him to do so as the Dunlap Chevrolet Company would do the work for $50. The plaintiff testified that she drove a little but did not have a driver's license, but that so far as she knew her husband had handled the car properly prior to his departure for California by train. A witness for the plaintiff testified, after examining the invoices from the defendant to the plaintiff which covered the work performed, that he would have done the work of overhauling the motor for $90.

J. J. Hutchison, brother of the defendant and the mechanic who repaired the plaintiff's car, testified for the defendant that he "ground the valves, tightened the main [bearing], put in a new rod, tightened rest of them, overhauled the job, put in a clutch, and put rings in it." When he turned the car loose, the motor and clutch were all right because the car ran as quiet as any he ever worked on that left his shop. When he was making the repairs, he examined the crank shaft and it was not flat at that time. He determined that by putting the crank shaft through this test: when the crank shaft is flat, if you tighten the

connecting rods, turn it over, it will lock in one place. The crank shaft on Mrs. Ball's car did not lock during the test. The clutch was in good condition when the car left the garage. He saw the car again in about two or three days. They (the plaintiff) had burned the clutch out and his brother pulled it in and put in a new clutch. This made the second clutch he had put in, as when the car was in the shop two or three days before, he had put in a clutch with a pressure plate. He didn't know what had happened to the clutch between the time the car left the garage and the time it came back, except that the clutch was burned out. He saw the car a third time when they brought it back because they couldn't or wouldn't get it in gear. The transmission was torn up and he fixed the transmission. At the time he repaired the transmission, the motor was all right. He saw the car a fourth time and it was knocking because a rod had burned out. He did not know what had caused the rod to burn out and everything looked as if it was in the right place and he figured it was just fast driving as fast driving will cause a rod to burn out. He dropped the pan and put in another rod on that occasion. He saw the car a fifth time and it was knocking just like it was the second time it went to the garage. He did not do anything to the car that time. There was no connection between the motor repairs and fixing the clutch—they were separate jobs. Repairing the transmission was also separate from the motor and clutch work.

The defendant, T. M. Hutchison, testified that he examined the car when it was first brought to him and it needed a clutch and clutch-plate job and the plaintiff decided to have the motor job done and some glass work done. The transmission shaft was bad when the car was brought to the garage. When the car was delivered to the plaintiff it was in good condition except for the transmission shaft. About the second day after he delivered the car to the plaintiff she burned out the clutch and he pulled the car back in and replaced the clutch free of charge. He did not think that a new clutch would burn out in two days if the automobile were properly handled. Two or three days later the car was back in his garage for repairs to the transmission. He pulled the transmission down and replaced the bearings in it and charged her $18 for labor and parts. Two or three days

later the car was back again for more repairs on the transmission. It was jumping out of high gear and he replaced the high gear shaft. For this repair he charged nothing for labor but only for the parts used in making the repair. In three or four weeks the car was again in his shop with a knock in it, caused by a burned-out rod. He took the rod out and examined it but could not tell what caused it to burn out. He put another rod in but made no charge for that. The next time he saw the car the rod was knocking again. He took it down that time and tightened the rod again which took the knock out of the motor and the motor seemed to be all right at the time, but it would not stay true because the crank shaft was flat. Driving an automobile with the rods burned out will flatten the crank shaft. When the car was repaired the first time he told his brother to tell the plaintiff when she came in and got the automobile that the crank shaft was flat. He told her it was flat the last time he tightened the rods. She wanted him to put the new crank shaft in, but he did not do it as she wanted him to do it for nothing. When she first came to his place nothing was said about the crank shaft being flat. On cross examination the defendant testified that he did not do the work, that his brother did all the repair work on the automobile and that he did not supervise his brother's work.

While there seems to have been considerable speculation as to the true nature of the action brought by the plaintiff in this case, we think it is properly to be considered an action for breach of warranty. Treating the action as such, the question arises whether the defendant contracted to make specified repairs on the automobile, warranting his service and the materials used, or whether he contracted to make whatever repairs were necessary and proper in his opinion as a mechanic in order to put the automobile in good running condition, warranting his skilled opinion, his services, and the materials used. Whether he contracted to make specified repairs or to put the automobile in good running order, we think the evidence was not sufficient to authorize the verdict for the plaintiff in the amount of $92. There is no direct evidence that the materials used or the services performed were in any way defective. The plaintiff testified that the first time she took the automobile to the defendant's

garage the clutch had been burned out and the defendant, upon whose knowledge of automotive mechanics she relied, advised her that the clutch was burned out and should be replaced, that the back bearing was throwing oil and she would have to have a new one put in and that the motor needed overhauling, and she let him do that. She paid him $120.92 for the work. Two or three days later the clutch which the defendant had installed was burned out and the defendant put in another clutch and charged the plaintiff $18 for the materials used, but nothing for the service of installation. This alone, we think, does not raise the inference that the first clutch which the defendant installed was defective or that the workmanship was faulty. The plaintiff was not driving the automobile during that period. Her husband and brother-in-law drove the car and though she testified that so far as she knew they handled the car properly, the possibility that their injudicious operation of the automobile burned out the clutch is not precluded. It appears that following this repair the plaintiff set out upon her trip to California and that the motor broke down in Alabama. A mechanic tightened the rods so that the plaintiff could drive the automobile back to Macon. When she returned to Macon, she took the automobile back to the defendant, and she testified that he patched it up, she thought, since it did not hold up. The charge for this repair, the nature of which does not clearly appear from the plaintiff's evidence, was $19.55. The defendant's evidence was that this charge covered the repair to the transmission which was a repair not included in the originial work which he undertook to perform. There is no evidence that the material used or the work performed in making this repair was defective. On the fourth return of the automobile to the defendant, the plaintiff testified that he told her the crank shaft was flat and that he would charge her $55 to repair it, but that she did not let him do it as another company would do the work for $50. It does not appear from the evidence that the crank shaft was flat at the time the first three repairs were made on the automobile, and the defendant specifically denies that it was. There is no explanation to be found in the plaintiff's evidence why, when, or how the crank shaft was flattened until she was advised on her fourth trip to the garage that such was its condition. The

burden was upon the plaintiff to establish the breach of warranty, and, treating the contract as one for *specified repairs*, we think she failed to do so. Nor do we think that if the contract is treated as one to put the car in good running order that the plaintiff has demonstrated that the defendant failed to do so by virtue of the use of defective material, or the use of unskilled labor in performing the repairs. At most, the evidence shows, by the defendant's admission, that the transmission was defective when the automobile was first brought to the defendant's garage and that he did not make any repair on the transmission until the car was returned the third time, at which time the defendant made a charge of $19.55 for repairing the transmission. Under the theory that the defendant was to put the automobile in good running order, the jury could have found that he failed insofar as the transmission was concerned and that the plaintiff was entitled to recover the $19.55 payment. This alone, however, would not authorize the verdict for $92, as under this theory, there is no other evidence of a breach of warranty by the defendant. Therefore, the plaintiff having failed to show that the material or workmanship was defective or to show the extent of her damage by virtue of the defendant's failure to put the automobile in good repair or to show to what extent the defendant failed to put the car in good running order, the verdict was unauthorized.

Since the case must go back for another trial, the other assignments of error are not considered as they are not likely to reoccur on another trial.

The court erred in overruling the motion for a new trial.

*Judgment reversed. Sutton, C. J., and Parker, J., concur.*